**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
BLANCA BENAVIDEZ, MARIA BENAVIDEZ,
JOSE BENAVIDEZ, JONATHAN BENAVIDEZ,
and MARITZA NUNEZ, individually and
on behalf of themselves and others                                **MEMORANDUM**
similarly situated,                                                            **AND ORDER**

                                        Plaintiffs,

                - against-

                                                                                    CV 17-200 (DRH) (AKT)
BURGER BROTHERS RESTAURANT GROUP,
INC., d/b/a BURGER KING**,** and JOHN
FROCCARO, and JEFF FROCCARO,
as individuals,

                                        Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.        PRELIMINARY STATEMENT**

          Plaintiffs Blanca Benavidez, Maria Benavidez, Jonathan Benavidez, Jose Benavidez, and

Maritza Nunez ("Plaintiffs") commenced this action on January 13, 2017 against their former

employer Burger Brothers Restaurant Group, Inc., Jeff Froccaro, and John Froccaro

(collectively, "Defendants") for violations of various wage and hours laws.  Specifically,

Plaintiffs assert claims for failure to pay proper overtime wages and unpaid wages pursuant to

the Fair Labor Standards Act ("FLSA") and the  New York Labor Laws ("NYLL").  In addition,

Plaintiffs seeks statutory penalties for Defendants' failure to provide written notices of Plaintiffs'

regular rate of pay and wage statements pursuant to the NYLL.  *See* Compl. [DE 1] ¶¶ 40, 44,

50, 97-102.  Before the Court at this time are Defendants' motions to (1) re-open discovery to

add 15 witnesses to the Joint Pre-Trial Order, and (2) amend Defendants' Answer to properly

plead the executive salaried employee exemption as an affirmative defense with respect to

Blanca Benavidez.  *See* Defendants' Memorandum of Law in Support of Defendants' Motions

("Defs.' Mem.") [DE 34-8].  Plaintiffs oppose Defendants' motions, arguing, among other

things, that re-opening discovery at this late juncture would severely prejudice Plaintiffs and that

Defendants have offered no good cause basis to amend their answer to include a previously

omitted affirmative defense.  *See* Plaintiffs' Opposition ("Pls.' Opp'n") [DE 35].  For the reasons

which follow:  (1) Defendants' motion to re-open discovery is GRANTED in part and DENIED

in part; and (2) Defendant's motion to amend is GRANTED to the extent set forth below.

## II.  BACKGROUND

### A.  Pertinent Facts

#### 1.  *The Pleadings*

The Court presumes the parties' familiarity with the facts alleged in this case.  *See*

DE 17, 23, 24, 31.  Briefly, Plaintiffs filed the Complaint on January 13, 2017. [1]  *See* DE 1.

Plaintiffs allege that they were employed at Defendants' Burger King restaurants in Blue Point,

Hauppauge, Coram, Huntington, Farmingdale, Ronkonkoma, Bohemia, and Central Islip, New

York at various times between 2000 and 2016.  *See id.* ¶¶ 37-60.  Plaintiffs generally allege, *inter*

*alia*, that during the course of their employment, they were either not paid time and one-half their

regular rate of pay for hours worked over 40 in one workweek, or they were required to work

hours "off the clock"— without compensation.  *See id*. ¶¶ 37-60.  With respect to Plaintiff

Blanca Benavidez, Plaintiffs allege that (1) she worked approximately 55 hours or more per

week and approximately 66 hours or more every other week from in and around 2000 until in or

---

[1]  The Court notes that Plaintiffs initially brought this lawsuit as a purported collective action, but never moved for collective action certification.  *See generally* Compl.; Defs.' Mem. at 1.  According to Defendants, Marta Nunez has not participated at all in the instant action and Plaintiffs have conceded that they only intend to proceed with the named Benavidez Plaintiffs' claims.  *See* Defs.'s Mem. at 1, n.1.

around August 2016, and (2) was paid approximately $675.00 per week in wages.  *See id.* ¶ 38.
According to Plaintiffs, she was not paid any overtime wages while employed by Defendants.
*See id.*  ¶ 40.

Defendants interposed their Answer on March 24, 2017.  *See* Answer [DE 13].  At that
time, Defendants failed to plead — as they now contend — that Blanca Benavidez was exempt
from receiving overtime pay under the FLSA and NYLL because she was an executive salaried
employee.  *See generally id.*  Significantly, Defendants did not plead any FLSA or NYLL
exemptions as affirmative defenses in their Answer with respect to any named Plaintiff.  *Id.*

### 2. *Discovery*

#### a. **The Exception**

The parties engaged in discovery before this Court between May 5, 2017 and
December 15, 2017.  *See* September 29, 2017 Civil Conference Minute Order; Pls.' Opp'n at
1-2.  Defendants' counsel concedes that the exemption defense was not properly pleaded in
Defendants' Answer.  *See* Defs.' Mem. at 3.  However, Defendants maintain that Plaintiffs were
aware throughout the course of discovery that Defendants were pursuing the executive employee
exemption with respect to Blanca Benavidez's overtime claims.  *See id.*  Defendants' counsel
points out that during the course of discovery, Defendants sought information relating to Blanca
Benavidez's executive status to support the exemption defense.  *See id.*  The Court finds
Defendants' posture here somewhat odd with respect to counsel's asking the *Plaintiffs* for
information supporting *Defendants'* position that Blanca Benavidez was an executive exemption
employee – since under the FLSA, the employer is ultimately responsible for making that
determination/designation.  The Court notes, in particular, Defendants' Interrogatory No. 2:

> 2. Between January 2011 and August 2016, were you a salaried employee of the Defendants, not entitled to overtime pay as a manager? If so, when and for how long?

Defendants' First Set of Interrogatories to Plaintiff Blanca Benavidez, annexed to the August 2, 2018 Declaration of James R. Frocarro, Esq. in Support of Defendants' Motions ("Frocarro Decl.") as Ex. B, Interrog. No. 2. The Court does not have the benefit of the Plaintiffs' response to this interrogatory. However, aside from the interrogatory being improper in that it calls for a legal conclusion, the question itself is peculiar coming from the Plaintiffs' employer – the person/entity in possession, custody and control of that information. This appears to be an example of the lack of familiarity of Defendants' counsel with certain principles of employment law.

Defendants further rely on Plaintiffs' document demands which sought Blanca Benavidez's job description. In response, Defendants provided notices signed by Ms. Benavidez, acknowledging and confirming, among other things, that all at relevant times (1) she was a manager, regularly supervising two or more employees; (2) she was a salaried employee paid $675 per week; and (3) in her capacity as a manager, she was not entitled to overtime compensation. *See* Defs.' Mem. at 3; Frocarro Decl., Ex. C ("Notices and Acknowledgements concerning Overtime Pay Under the Fair Labor Standards Act/Notice for Exempt Employees").

In addition, Defendants claim that the interrogatories posed by the Plaintiffs elicited responses that are "clearly relevant to the 'Exemption' defense." *See* Defs.' Mem. at 3. For example, in response to Plaintiffs' interrogatory concerning Blanca Benavidez's job responsibilities, Defendants answered as follows:

> Blanca Benavidez was an Assistant manager/Shift Coordinator whose primary duty was management. Her duties included regularly supervising two or more other employees, providing genuine employment into the job status of other employees, including but not limited to, training, hiring, firing, promotions or other

assignments of other employees. Her job also included setting rates of pay and hours of work for other employees. Her job also included maintaining food safety, production and sales records, appraising employee productivity, handling employee grievances or complaints, disciplining employees, teaching adherence to established work techniques, planning the work of other employees, apportioning work among employees, planning budgets for work, monitoring work for legal or regulatory compliance, and providing safety and security of the workplace.

*See id.* at 4; *see also* Frocarro Decl., Ex. D ("Defs.' Responses to Pls.' Interrogatories"), Interrog. No. 10.

### b. The JPTO

At the conclusion of discovery, the parties filed a proposed Joint Pre-Trial Order ("JPTO") on May 23, 2018. *See* DE 27. As relevant here, the JPTO identifies 18 witnesses to be offered by Defendants at trial: Demetriadis Diamentis, Eduardo Villa, Jean Balan, Joseph Harvay, Ashley McKenzie, Jonathan Melara, Estella Rodriguez, Kylie Gonzalez, Jeffrey Villella, Raul Menjivar, Rocio Jimenez, Brittney Rivera, Yolanda Velez, Arthur Chimenti, John Froccaro, and Jeff Frocaro. *See id.* § ix. As indicated in the JPTO, Plaintiffs object to the inclusion of 15 new witnesses who were not previously disclosed in Defendants' Rule 26(a) disclosure at the outset of discovery, nor at any time since until the JPTO was filed. *See id.* Only Blanca Benavidez, John Frocarro, and Jeff Frocarro were identified by Defendants previously. *See id.*

Defendants concede that they did not disclose the 15 witnesses in their Rule 26(a) Initial Disclosures as individuals likely to have information relating to the claims and/or defenses raised in this case. *See* Defs.' Mem. at 6. However, Defendants contend that Plaintiffs were placed on notice during discovery that other individuals possessed relevant information, including information about Plaintiffs' hours and wages, the Defendants' wage and overtime polies and practices, and the Defendants' recordkeeping practices in connection with Plaintiffs' hours and wages. *See* Defendants' Reply Memorandum of Law in Support of Defendants' Motion ("Defs.'

Reply Mem.") at 3. For example, in response to a number of interrogatories asking Defendants to identify individuals with information related to Plaintiffs' wages and hours and Defendants' overtime, wage, and recordkeeping policies and practices, Defendants listed the following 11 individuals: Arthur Chimenti, Yolanda Velez, Raul Menjivar, Eduardo Villa, Jean Balan, Kylie Gonzalez, Estella Rodriguez, Jeffrey Villella, Rocio Jimenez, Brittney Rivera, and Stephanie Valladares. *See* Defs.' Mem. at 6-8; Frocarro Decl., Ex. D, Interrog. Nos. 7, 11, 13, 17, 23. Further, Defendants maintain that Plaintiffs themselves identified Demetrius Diamentis, Eduardo Villa and Raji Menjivar as individuals having discoverable information related to whether Plaintiffs were properly paid. *See* Defs.' Mem. at 8.

Plaintiffs point out that although Defendants identified a number of non-parties in response to Plaintiffs' First Set of Interrogatories, Defendants did not include any of these individuals in response to Plaintiffs' first interrogatory, which asked Defendants to "[i]dentify each and every person whom Defendants intend to call as a witness at the trial of this matter and state the nature of the testimony to be elicited." *See* Pls.' Opp'n at 6 and Ex. G ("Defendants' Response to Plaintiffs' First Set of Interrogatories"), Interog. No. 1. In response, Defendants stated "Defendants presently intend to call as witnesses at trial, all of the Plaintiffs as well as Defendant's John Froccaro and Jeff Frocarro." *Id*.

### c. **Relevant Procedural History**

On June 11, 2018, Defendants filed a letter motion seeking to amend the Answer to include the executive employee exemption as an affirmative defense with respect to Blanca Benevidez's overtime claims. *See* DE 29. The Court conducted a pre-trial conference with the parties one week later on June 18, 2018 and addressed Defendants' letter motion. *See* June 18, 2018 Civil Conference Minute Order [DE 31]. At that time, the Court also addressed Plaintiffs'

objections to Defendants' witness list as stated in the JPTO. *Id.* The Court denied Defendants' letter motion on procedural grounds and informed counsel that "the motion to amend, even at this late date, must be made by formal motion on notice pursuant to the Federal Rules of Civil Procedure." *Id*. ¶ 2. With respect to Plaintiffs' objections to the previously undisclosed witnesses listed in Defendants' JPTO witness list, the Court informed Defendants' counsel that Defendants "cannot simply add these names to the JPTO" after the fact. *Id.* ¶ 3. The Court also advised counsel that if Defendants wished to pursue the matter they would be required to file a formal motion seeking to re-open discovery. *Id.* Defendants' counsel responded that he wanted to file a motion seeking to (1) re-open discovery for the limited purpose of adding the previously undisclosed nonparty witnesses to the JPTO and (2) amend Defendants' Answer to include the executive employee exemption as an affirmative defense with respect to Blanca Benavidez's overtime claims. The motion was fully briefed on September 3, 2018. *See* DE 34; DE 25; DE 36.

## III.   DISCUSSION

### A.   Motion to Re-open Discovery

According to Defendants, the 15 non-party individuals included in their JPTO witness list are other employees of Defendants' restaurants who "actually worked with the Benavidezes and possess first-hand knowledge about what occurred at the Burger King restaurants . . . and will refute [Plaintiffs'] claims." *See* Defs.' Reply Mem. at 4. Defendants assert that each such individual has relevant knowledge of Defendants' pay practices and policies and Plaintiffs' hours and wages. *Id.*

Relying on the six-part test enunciated in *Moroughan v. The County of Suffolk and County of Nassau, et al*, No. 12-CV-512, 2018 WL 3083732 at *2 (E.D.N.Y. June 22, 2018),

Defendants argue that there is good cause for re-opening discovery. *See* Defs.' Mem. at 11- 14. In particular, Defendants underscore that: (1) no trial date has been set; (2) Plaintiffs will incur no prejudice because they will have the opportunity "to conduct discovery with respect to individuals with clearly discoverable information whom they [previously] never chose to question"; and (3) Defendants have not sandbagged Plaintiffs because Defendants previously made known to Plaintiffs during the discovery process that a number of nonparties, including those listed in Defendants' JPTO witness list, have discoverable information. *See id.*

In opposition, Plaintiffs contend that Defendants failed to comply with their disclosure obligations under Rule 26(a) and have provided no substantial justification for re-opening discovery to amend Defendants' disclosures at this late date. See Pls.' Opp'n at 4-5. In particular, Plaintiffs maintain, as this Court previously held in *Badolato v. Long Island R.R.*, 2016 WL 6236311 at *10 (E.D.N.Y. Oct. 24, 2016), that Defendants are not absolved of their Rule 26(a)(1)(A) disclosure obligation just because Plaintiffs were aware of the non-disclosed individuals included in Defendants' JPTO witness list. *See* Pls.' Opp'n at 5-6. Further, Plaintiffs argue that Defendants have failed to demonstrate the requisite good cause to re-open discovery. *See id.* at 7-8. Plaintiffs maintain that a trial date is imminent and that Plaintiffs would be greatly prejudiced by having to expend extensive resources, including time and money, on over 20 depositions to take discovery of the individuals not previously disclosed. *Id.* Plaintiffs also assert that Defendants failed to exercise diligence in disclosing their non-party witnesses and that based on Defendants' disclosures, it was not foreseeable that additional discovery related to non-parties would be necessary. *Id* at 10-11.

## *1.    Applicable Standard of Review*

"'A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery.'"  *Leong v. 127 Glen Head Inc.,* CV 13–5528, 2016 WL 845325, at \*3 (E.D.N.Y. Mar. 2, 2016) (quoting  *Thieriot v. Jaspan Schlesinger Hoffman LLP,* No. 07-CV-5315, 2010 WL 4038765 (E.D.N.Y. Sept. 30, 2010) ); *see Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 927 (2d Cir. 1985) (denying plaintiff's request to re-open discovery when plaintiff had "ample time in which to pursue the discovery that it now claims is essential").  The decision whether to re-open discovery is within a district court's discretion. *Krawec v. Kiewit Constructors Inc.*, No. 11-CV-123, 2013 WL 1104414, at \*8 (S.D.N.Y. Mar. 1, 2013); *see Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 626 Fed. App'x. 316, 319 (2d Cir. 2015) (summary order) (finding no abuse of discretion in the district court's "refus[al] to allow [the plaintiffs] to reopen discovery for the purposes of disclosing an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2)"); *see generally Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (stating that a district court has "broad discretion to direct and manage the pre-trial discovery process.").  "As a general rule, discovery should only be re-opened for good cause, depending on the diligence of the moving party."  *Krawec*, 2013 WL 1104414, at \*8 (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ); *see, e.g., Bakalar v. Vavra*, 851 F.Supp.2d 489, 493 (S.D.N.Y. 2011) ("In deciding whether to reopen discovery, courts consider whether good cause exists.") (citing *Gray v. Town of Darien*, 927 F.2d 69 (2d Cir. 1991) ); *see Marshall v. Starbucks Corp.*, No. 11-CV-02521, 2013 WL 123763, at \*2 (S.D.N.Y. Jan. 8, 2013) (same).  In analyzing a request to re-open discovery, courts apply the following six-part test: 1) whether trial is imminent; 2) whether the request is opposed; 3)

whether the non-moving party would be prejudiced; 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and 6) the likelihood that the discovery will lead to relevant evidence. *Pharmacy, Inc v. American Pharmaceutical Partners, Inc.*, No. 5-CV-776, 2008 WL 4415263 at *3 (E.D.N.Y. Sept. 24, 2008) (citations omitted); *accord Bakalar v. Vavra*, 851 F.Supp.2d 489, 493 (S.D.N.Y. 2011).

### 2. *Discussion*

In order to determine whether discovery should be re-opened, the Court must address each of the six factors articulated above with respect to Defendants' motion. However, as a preliminary matter, the Court must determine whether Defendants violated Rule 26(a)(1)(A) by failing to include Defendants' non-party witnesses in their Initial or Supplemental Disclosures.

### a. Rule 26(a)

Pursuant to Rule 26(a)(1)(A), a party, without awaiting a discovery request, must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims and defenses." Fed. R. Civ. P. 26(a)(1)(A). "These disclosures must be made at or within 14 days after the Rule 26(f) conference unless a different time is set by stipulation or court order." *Id.* Under Rule 37(c)(1), a party which fails to disclose information or identify a witness as required by Rule 26(a) "is not allowed to use that information or witness to supply evidence on the motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Haas v. Del. & Hudson Ry. Co.*, 282 Fed. App'x 84, 86 (2d

Cir. 2008) (summary order); *see, e.g.*, *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000).

"Despite the mandatory nature of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if the trial court finds that there is no substantial justification and the failure to disclose is not harmless." *Pal v. N.Y. Univ.*, No. 06–CV–5892, 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)); *see also S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) ("The district court is free to consider the full record in the case in order to select the appropriate sanction." (internal quotation marks and citation omitted)); *Thompson v. Jamaica Hosp. Med. Ctr.*, No. 13–CV–1896, 2015 WL 3824254, at *2 (S.D.N.Y. June 19, 2015) ("Rule 37 requires that any action be 'just,' in order to ensure that the 'severity of sanction [ ] be commensurate with the noncompliance.'") (alteration in original) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007)).

Here, Defendants' counsel conceded in his motion papers that Defendants' Initial Disclosures did not list any non-party individuals and Defendants did not serve Supplemental Disclosures as required under Rule 26 naming any such individuals while discovery was under way. Nevertheless, Defendants now assert that they satisfied their disclosure obligations with respect to the non-parties identified in Defendants' JPTO witness list because: (1) Defendants identified eleven of the individuals as persons with information relevant to Plaintiffs' claims in response to Plaintiffs' Interrogatory Nos. 17, 11, 13, 17, and 23; and (2) Plaintiffs identified three non-party witnesess (Demetrius Eiamentis, Eduardo Villa, and Raji Menjivar) as having discoverable information on the issue of whether Plaintiffs were properly paid. *See* Def.'s Mem. at 6-8.

"Many courts in this Circuit . . . have held that the mere mention of a name in a deposition or interrogatory response is insufficient to satisfy Rule 26(a)(1)(A)[.]" *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012) (collecting cases). "Rather, to satisfy Rule 26, parties must make an unequivocal statement that they may rely upon an individual on a motion or at trial." *Id.* at 73. "The purpose of this disclosure is to alert an opposing party of the need to take discovery of the named witness." *Pal*, 2008 WL 2627614, at *4 (citing *Alfano v. Nat'l Geographic Channel*, No. 06-CV-3511, 2007 WL 2982757, at *1 (E.D.N.Y. Oct. 5, 2007) ("Rule 26(a)(1) requires the disclosure not merely that a person is a potential source of information, but that the party may call upon him to provide it.")).

Applying these standards, the Court concludes that Defendants violated Rule 26(a)(1)(A) by failing to identify the non-parties in their Initial Disclosures. The case law makes clear that, even if Plaintiffs were aware that these individuals existed, that awareness did not absolve Defendants of their Rule 26(a)(1)(A) disclosure obligation, which "is fulfilled only if [Defendants] informed [Plaintiffs] that [Defendants] might call the witness[es] in support of [their] claims or defenses." *Pal*, 2008 WL 2627614, at *4 (citing *Alfano*, 2007 WL 2982757, at *1). It is undisputed that Defendants did not inform Plaintiffs of their intent to do so here. Finally, Defendants' bald assertion — without citation to any supporting case law — that Plaintiffs should have anticipated that Defendants would call the non-parties listed in their interrogatory responses as witnesses is unpersuasive. That argument runs counter to the purposes of Rule 26(a)(1)(A), especially when, in response to Plaintiff's interrogatory calling for the identification of Defendants' trial witnesses, Defendants did not include ***any*** of the non-parties' names in Defendants' JPTO witness list.

### b. Re-opening Discovery

Having established that Defendants failed to comply with their disclosure obligations under Rule 26(a), the Court must determine whether to re-open discovery in accordance with the factors enunciated in *Pharmacy, Inc.* and *Moroughan.*

#### i. Timing of Trial

No trial date has yet been set in this case. Plaintiffs do not contest this fact. Consequently, the first factor weighs in Defendants' favor. *See Spencer v. Int'l Shoppes, Inc.*, 06 Civ. 2637, 2011 WL 3625582, at * 2 (E.D.N.Y. Aug. 16, 2011); *Thieriot,* 2010 WL 4038765, at *6; *Pharmacy Inc.*, 2008 WL 4415263, at *4.

#### ii. Whether the Motion is Opposed

There is no question that Plaintiffs vigorously oppose Defendants' motion to re-open discovery. Defendants' counsel here attempts to minimize the force of Plaintiffs' opposition by suggesting that re-opening discovery "would provide Plaintiffs with a second opportunity to engage in discovery with respect to the same individuals they chose not to question before." *See* Defs.' Mem. at 11. The Court notes that in light of the fact that Defendants failed to disclose these individuals pursuant to Rule 26, counsel's argument is unavailing to the extent is presumes Plaintiffs should have taken discovery from these individuals in the first instance. That attempt to shift the burden to Plaintiffs here is disingenuous. Defendants also maintain that Plaintiffs' opposition is a "thinly veiled attempt to prevent a proper decision on the merits of their claims." In light of the fact that the motion is vigorously opposed, the second factor weighs in Plaintiffs' favor.

### iii.        *Prejudice to Plaintiffs*

The prejudice to the Plaintiffs here is the expense involved if discovery is re-opened, along with the delay in getting this case to trial. This factor weighs against the Defendants. Defendants contend that Plaintiffs would not incur prejudice because re-opening discovery "would enable them to conduct discovery with respect to individuals with clearly discoverable information whom they never chose to question before with respect to the merits of Plaintiffs' claims." Defs.' Mem. at 11. For the reasons stated in connection with the second factor, the Court finds Defendants' argument unavailing.

### iv.        *Diligence of Defendants in Seeking Discovery*

Defendants never supplemented their Rule 26(a) disclosures, nor did Defendants ever inform Plaintiffs of their intention to call the substantial number of non-parties as trial witnesses as only recently disclosed in the JPTO. From all the information presented, it is reasonable to conclude that Defendants have been aware of the role and importance of the proposed non-party witnesses since the very early stages of this litigation. It is also reasonable to conclude that Defendants' need to call these previously undisclosed non-party witnesses was foreseeable at the outset of discovery. How counsel could have overlooked the inclusion of theses individual or elected not to include them in Defendants' Rule 26(a) Initial Disclosures is difficult to fathom. It is even more difficult to understand the basis on which counsel omitted these individuals from its answer to Plaintiffs' first interrogatory and why Defendants never amended their Rule 26(a) disclosures before the close of discovery. Defendants offer no substantive reason why they could not have disclosed information in the appropriate manner as required under the Federal Rules on such crucial elements of their case. *See Thieriot v. Jaspan Schlesinger Hoffman, LLP*, No. CV 07-5315, 2010 WL 4038765, at *6 (E.D.N.Y. Sept. 30, 2010) (citation omitted).

Defendants' argument that they were diligent by making the information known to Plaintiffs —
after the close of discovery and at the point of this Court certifying the case as trial-ready to
Judge Hurley — that a substantial number of non-party witnesses would be called at trial lacks
credibility. That type of "diligence" reflects either a tactical decision or a serious lack of
knowledge of discovery practices in the federal courts. Therefore, this factor weighs in
Plaintiffs' favor.

### v.      *Foreseeability of the Need for Discovery*

The Defendants' need to call these non-disclosed witnesses was both foreseeable and
self-evident. As such, this factor weighs in Plaintiffs' favor.

### vi.     *Likelihood that Discovery will Lead to*
###         *Relevant Evidence*

The Defendants maintain that the non-disclosed witnessres worked with the Benavidezes
and that they possess first-hand knowledge about what occurred at Defendants' restaurants. *See*
Defs.' Reply Mem. at 4. Further, as set forth in Defendants' responses to Plaintiffs'
interrogatories, the witnesses have knowledge of the respective Plaintiffs' working conditions
and have provided information that Plaintiffs were at all times paid properly by Defendants.
Significantly, the relevant evidence that might be obtained goes directly to the merits of
Plaintiffs' claims. According to Defendants' responses to Plaintiffs' interrogatories, these non-
party witnesses have information about Plaintiffs' hours and wages, the manner in which
Plaintiffs' wages were calculated and paid, and Defendants' policies and practices in connection
with wages, overtime, and recordkeeping. *See* Defs. Mem. at 6-8. In this regard, this factor
weighs in favor of Defendants.

###### vii.    *Balancing the Factors*

Defendants were unequivocally aware that the undisclosed witnesses had discoverable information on which Defendants plan to rely at trial. The Court finds inexplicable the omission of the non-party witnesses from Defendants' response to Plaintiffs' first interrogatory which clearly asked the Defendants to identify their trial witnesses. There was no trickery or confusion in the wording of that interrogatory. The irony is not lost on the Court that Defendants rely emphatically on their interrogatory responses to support their motion, and yet the most relevant interrogatory response does not support Defendants' arguments.

The Court must nonetheless weigh, under existing Second Circuit case law, whether the circumstances of this case warrant the "drastic remedy" of preclusion. *See, e.g., Torres v. Dematteo Salvage Co., Inc.,* CV 14–774, 2016 WL 845326, at *6 (E.D.N.Y. Mar. 2, 2016); *Sci. Components Corp.*, No. 03 CV 1851, 2008 WL 4911440, at *4 (E.D.N.Y. Nov. 13, 2008); *see generally Valentin v. Cty. of Suffolk*, 342 Fed. App'x. 661, 662 (2d Cir. 2009) (summary order) ("The district court recognized that defendants' late disclosure of their expert violated its expert discovery deadline. But rather than preclude the testimony, the court opted to impose the lesser sanction of requiring defendants to produce their expert for a deposition at Valentin's request. The court's decision to impose a less drastic sanction than preclusion was within its discretion.").

Having considered the relevant factors, the Court reluctantly finds that discovery should be re-opened for a very limited purpose. As unsatisfying as Defendants' failure to comply with Rule 26 is, a trial date has not been set and the prejudice to the Plaintiffs can be offset to a degree here. Moreover, "such prejudice [does] not outweigh the other factors." *Sci. Components Corp.*, 2008 WL 4911440, at *4. However, it is also important that the Defendants not be rewarded for their actions/omissions here to the detriment of the Plaintiffs. Counsel for the Defendants will be

permitted to re-open discovery to amend Defendants' Rule 26 disclosures by adding five witnesses from the undisclosed group of Defendants' trial witnesses. The names of those five witnesses are to be disclosed to Plaintiffs' counsel no later than April 8, 2019. All of the Defendants' other non-disclosed witnesses are precluded from testifying at trial. Plaintiffs' counsel will then have 60 days — until June 10, 2019 — to depose some or all of those five witnesses. The costs of those depositions shall be borne by the Defendants. Likewise, Defendants are responsible for having the five witnesses produced for their depositions, notwithstanding their non-party status.

### B. Motion to Amend

During the parties' June 18, 2018 Pre-Trial Conference, the Court directed counsel to file the instant motion as a formal motion on notice under the Federal Rules and further directed counsel to address Rule 16 "since the time to amend has long past and discovery closed on December 15, 2017." *See* June 18, 2018 Civil Conference Minute Order at ¶ 2.

According to Defendants, the Court never set a deadline by which to amend the pleadings and therefore the Court should analyze the instant motion under the less exacting standard required by Rule 15. See Defs.' Mem. at 18. Defendants argue that the Court should grant Defendants leave to amend the Answer to include the executive employee exemption with respect to Blanca Benavidez's overtime claims because: (1) there is no evidence of bad faith or dilatory motive with respect to Defendants' proposed amendment; (2) Blanca Benavidez will not be prejudiced by the assertion of this defense because it will not require Plaintiffs to incur significant resources to defend; and (3) the assertion will not come as a surprise because Defendant has provided discovery to Plaintiffs' concerning Blanca Benavidez's status as an exempt employee. *See* Defs.' Mem. at 21. Defendants note that their failure to plead the

exemption was a result of inadvertence — explaining that the focus of the law firm practice of Defendants' counsel is criminal defense and Defendants' counsel did not realize that the overtime exemption may be waived if not affirmatively raised in Defendants' answer. *See id.* at 3, n.3.

In opposition, Plaintiffs assert that Defendants' motion should be analyzed under Rule 16 because it has been made after the close of discovery. Plaintiffs argue that that the motion should be denied because there is no good cause for Defendants to amend, especially not Defendants' "inadvertence," and Defendants' conduct falls short of the diligence required by Rule 16. Pls.'s Opp'n at 15.

### 1. Legal Standards

Rule 16 allows a party to obtain a modification of a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). It is the movant's burden to establish good cause. *See Parker,* 204 F.3d at 340; *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.,* No. 02 Civ. 1230(LMM), 2006 WL 2242596, at *3 (S.D.N.Y. Aug.3, 2006). "Whether good cause exists turns on the diligence of the moving party." *Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir.2009) (internal quotations and citations omitted). A party has not acted diligently where the proposed amendment to the pleading is based on information "that the party knew, or should have known," in advance of the deadline sought to be extended. *See Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.,* 889 F.Supp.2d 453, 457 (S.D.N.Y.2012) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.,* No. 05 Civ. 3749, 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (collecting cases), *aff'd,* 2009 WL 3467756 (S.D.N.Y. Oct.28, 2009)). Although diligence is the primary focus of a "good cause" analysis, a court may, in its discretion,

also consider other factors, including prejudice to the nonmoving party. *Kassner,* 496 F.3d at 244.

Rule 15(a) provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Barber v. Hornbeck Offshore Operators, LLC*, No. 11-CV-5520, 2014 WL 1010993, at *5 (E.D.N.Y. Mar. 17, 2014); *M.E.S., Inc. v. Liberty Mut. Sur. Group*, No. 10 Civ. 2798, 2014 WL 46622, at *8 (E.D.N.Y. Jan. 6, 2014). Leave to amend is within the court's discretion. *Krupski v. Costa Crociere S. p. A.*, 130 S . Ct. 2485, 2489 (2010) (Rule 15(a) "gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *MHANY Mgmt. v. Cty. of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to grant leave to amend"). "Amendments are generally favored because they tend to facilitate a proper decision on the merits." *MHANY Mgmt.*, 843 F. Supp. 2d at 340; *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 302 (E.D.N.Y. 2013) (same) (citing *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)).

Notwithstanding the above, leave to amend a pleading may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party. . . ." *Balk*, 2013 WL 6990767, at *5; *see Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011. In the case of inordinate delay, "absent a showing of bad faith or undue prejudice, [delay] does not provide a basis for the district court to deny the right to amend." *Chenensky v. New York*

*Life Ins. Co.*, No. 07-CV-11504, 2012 WL 234374, at *1 (S.D.N.Y. Jan. 10, 2012) (quoting

*Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)).

To determine what constitutes sufficient prejudice to warrant denial of a party's request

to amend its pleading, "the Court considers whether the amendment would:  (i) require the

opponent to expend significant additional resources to conduct discovery and prepare for trial;

(ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiffs from bringing a

timely action in another jurisdiction."  *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2013

WL 1703529, at *4 (E.D.N.Y. Apr. 19, 2013) (internal quotations omitted); *see Block v. First

Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993); *Kirschenbaum v. Federal Ins. Co.*, 505 B.R.

126, 132 (E.D.N.Y. 2014).

The party opposing the motion to amend carries the burden to establish that one or more

of the above factors would cause it substantial prejudice thus necessitating denial of the motion.

*See Kirschenbaum* 505 B.R. at 132; *Alkhatib*, 2015 WL 3507340, at *7; *Golden Trade*, 143

F.R.D. at 506 ("[T]he party opposing the motion [to amend] must demonstrate that it would be

*substantially and unfairly* prejudiced by the amendment.") (emphasis added).  Further, courts

have determined that time, money and effort expended in defending a lawsuit does not rise to the

level of prejudice necessary to defeat a motion to amend.  *See Block*, 988 F.2d at 351 (noting that

the time, effort and money expended fail to rise to the level of "substantial prejudice" necessary

to defeat a motion to amend); *Kirschenbaum* 505 B.R. at 132; *S.S. Silverblatt, Inc. v. E. Harlem

Pilot Block-Bldg. 1 Hous. Dev. Fund Co., Inc.*, 608 F.2d 28, 43 (2d Cir. 1979) ("[T]he burden of

undertaking discovery, which Chemical would have shouldered had the proposed amendment

been incorporated . . . hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor

of permitting the parties to obtain an adjudication of the merits.").

## 2. *Discussion*

The Court draws counsels' attention to the Initial Conference Minute Order of May 11, 2017 — the Court's first meeting with the parties. *See* DE 17. The Court reviewed the Rule 26(f) report of counsel and implemented the Case Management and Scheduling Order ("CMSO") [DE 18]. *Id.* Paragraph 8 of the Minute Order states as follows: "The deadline to make a formal motion under the Federal Rules to add parties or amend the pleadings is held in abeyance pending the outcome of the anticipated motion for collective action certification." *Id.* In the CMSO of that same day, in the "deadlines" column next to the entry for the deadline to add parties or amend pleadings, the Order reflects the designation "T/B/D" or "to be determined." DE 18. Plaintiffs here never filed a motion for certification of the collective action under § 216(b). Nor did counsel ever advise the Court that the Plaintiffs were not proceeding with the collective action prior to the close of discovery, or thereafter, until the JPTO had been filed and the Court conducted the Pre-Trial Conference. It is interesting to note that the JPTO itself still has this case captioned as a collective action.

Defendants' counsel is correct that when the Court entered the "Final Scheduling Order" at the September 29, 2017 Discovery Status Conference [DE 23], there was no specific deadline stated for amendment of pleadings. However, the Order does reflect a December 15, 2017 deadline for the completion of all discovery. Because the parties represented that they were not retaining experts for this case, the Court then set a January 23, 2018 deadline for filing any letter requests to Judge Hurley for purposes of making a summary judgment motion.

Based on the information presented here, the Court finds no evidence of bad faith or dilatory motive on the part of the Defendants. However, Defendants' counsel asserts that the delay was "inadvertent" and the result of his inexperience in this area of practice. That representation as to

ignorance of the rules of practice does not excuse what occurred here. Nor does it establish good cause. The Court finds that any reasonable practitioner who litigates in this area would have been aware of issues and timing with respect to amending pleadings. Certainly, any reasonable practitioner would have known that the deadline for the close of discovery, at the very latest, would have cut off any ability to amend, except in the most unusual circumstances.

Although taking these factors into account, the Court still cannot overlook the information which Plaintiffs had in their possession during the discovery phase of this case. Significantly, during the course of discovery, Defendants produced documents relating to the employment status of Blanca Benavidez. Most notably, Defendants produced notices signed by Ms. Benavidez, acknowledging and confirming that at all relevant times (1) she was a manager, regularly supervising two or more employees; (2) she was a salaried employee being paid $675 per week; and (3) in her capacity as a manager, she was not entitled to overtime compensation. *See* Defs.' Mem. at 3 and Frocarro Decl., Ex. C. In addition, Plaintiffs' own interrogatory concerning Blanca Benavidez's job responsibilities elicited a detailed description from Defendants, identifying Ms. Benavidez's role as a manager. *See* Defs.' Mem. at 4; Frocarro Decl., Ex. D, at Interrog. No. 10. Consequently, at a minimum, Plaintiffs were made aware during discovery that Defendants were proffering some documentary evidence to support the application of the executive employee exemption to Blanca Benavidez and that Defendants were aware of the exemption as a defense to Ms. Benavidez's overtime claims.

Moreover, Plaintiffs have not engaged in any analysis under Rule 15 and, as a result, have not satisfied their burden to show that the proposed amendment would (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiffs from bringing a

timely action in another jurisdiction. Notably, since discovery concerning the exemption has already been exchanged, Plaintiffs will not need to expend significant resources seeking further discovery, nor will the proceedings be significantly delayed.

Even if the Court were to consider Defendants' application under Rule 16, which would not be unreasonable, the Court would, in its discretion, grant Defendants leave to amend their Answer under the totality of the circumstances. *See Balk v. New York Institute of Technology*, No. 11-CV-509, 2013 WL 6990767 (E.D.N.Y. Sept. 30, 2013). In *Balk*, this Court granted defendant New York Institute of Technology's ("NYIT") motion to amend under Rule 16 where NYIT failed to raise three affirmative defenses until after the deadline to amend the pleadings had passed. In granting NYIT's motion to amend its answer to include these affirmative defenses, this Court explained:

> The Court has considered the arguments from both parties and finds that while NYIT has not exactly demonstrated "good cause" for a modification of the CMSO, leave to amend NYIT's Answer should be granted. Plaintiff argues that, despite multiple opportunities, NYIT failed to assert the two affirmative defenses it now seeks to add, thereby prejudicing Plaintiff. The Court, however, finds that although NYIT has not been a model of diligence or compliance with deadlines nor provided a robust "good cause" argument, the ultimate determination here is within the Court's discretion, taking into account the totality of the circumstances.

*Balk*, 2013 WL 6990767, at *9. In exercising its discretion, this Court noted in *Balk* (1) the procedural posture of the case — that no trial date had been set; (2) that the plaintiff had not demonstrated bad faith, dilatory motive or futility with respect to the defendant's proposed amendment; and (3) that the plaintiff would not be prejudiced by the assertion of these affirmative defenses since, *inter alia*, they would not require plaintiff to devote significant additional resources or cause significant delay. *Id.* This Court also considered that the plaintiff could not claim surprise with respect to the amendment because NYIT had alluded to the affirmative defenses earlier in the litigation. *Id.*

Here, as in *Balk*, there is no trial date yet set, and notwithstanding the assertion by Plaintiffs' counsel that trial is "imminent," that is simply not the case. The Court further finds that Plaintiffs will not be required to expend significant resources to conduct discovery in connection with the amendment, nor will the amendment cause significant delay, particularly in light of the Court's ruling concerning the undisclosed non-party witnesses. Finally, since Plaintiffs have been aware of the evidence in support of the exemption based on the parties' exchanges during discovery, Plaintiffs cannot reasonably claim surprise.

Although the Court finds that Plaintiff will not be prejudiced by the amendment, in light of these circumstances, the Court will give Plaintiffs's counsel the opportunity to conduct limited discovery on the affirmative defense of exemption with regard to Blanca Benavidez if such discovery is necessary. Defendants' counsel is directed to file the Amended Answer, solely to address the affirmative defense of exemption vis-à-vis Blanca Benavidez, by April 8, 2019. Plaintiffs' counsel is to advise the Court by April 8, 2019 whether Plaintiffs intend to conduct further discovery with respect to the newly added affirmative defense and, if so, what specific discovery is needed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to re-open discovery is GRANTED in part and DENIED in part. The parties are to abide by the directives set forth above with respect to the implementation of this Order. Further, Defendants' motion to amend its Answer is GRANTED to the extent set forth in this Memorandum and Order. Defendants shall file their Amended Answer by April 8, 2019. Plaintiffs' counsel shall advise the Court by April 8, 2019 as to any additional discovery which may be necessitated by this Memorandum and Order.

**SO ORDERED.**

Dated: Central Islip, New York
      March 29, 2016

<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge